# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Filed February 1, 2023

No. 21-5028

WASHINGTON ALLIANCE OF TECHNOLOGY WORKERS,
APPELLANT

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-01170)

On Petition for Rehearing En Banc

Before: SRINIVASAN, *Chief Judge*; HENDERSON**, MILLETT, PILLARD, WILKINS, KATSAS*, RAO***, WALKER, CHILDS, and PAN*, *Circuit Judges*.

**O R D E R**

Appellant's petition for rehearing en banc and the responses thereto were circulated to the full court, and a vote was requested. Thereafter, a majority of the judges eligible to participate did not vote in favor of the petition. Upon

2

consideration of the foregoing, it is

**ORDERED** that the petition be denied.

### Per Curiam

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk

\* Circuit Judges Katsas and Pan did not participate in this matter.

\*\* Circuit Judge Henderson would grant the petition for rehearing en banc. A statement by Circuit Judge Henderson, dissenting from the denial of rehearing en banc, is attached.

\*\*\* Circuit Judge Rao would grant the petition for rehearing en banc. A statement by Circuit Judge Rao, joined by Circuit Judge Henderson, dissenting from the denial of rehearing en banc, is attached.

KAREN LECRAFT HENDERSON, *Circuit Judge*, dissenting from the denial of rehearing en banc: For the reasons explained in my panel dissent, which is hereby incorporated by reference thereto, *Wash. All. of Tech. Workers v. DHS* ("*Washtech*"), 50 F.4th 164, 194–206 (D.C. Cir. 2022) (Henderson, J., concurring in part and dissenting in part), I dissent from the denial of rehearing en banc.

RAO, *Circuit Judge*, with whom Circuit Judge HENDERSON joins, dissenting from the denial of rehearing en banc: For the reasons thoughtfully explained in Judge Henderson's dissent, the panel's interpretation of the F-1 student visa provision cannot be reconciled with the text and structure of the Immigration and Nationality Act ("INA"). Rehearing en banc is warranted because the panel decision has serious ramifications for the enforcement of immigration law. In holding that the nonimmigrant visa requirements are merely conditions of entry, the court grants the Department of Homeland Security ("DHS") virtually unchecked authority to extend the terms of an alien's stay in the United States. This decision concerns not only the large number of F-1 visa recipients, but explicitly applies to all nonimmigrant visas and therefore has tremendous practical consequences for who may stay and work in the United States. By replacing Congress's careful distinctions with unrestricted Executive Branch discretion, the panel muddles our immigration law and opens up a split with our sister circuits. This is a question of exceptional importance, and I respectfully dissent from the decision not to rehear it as a full court.

\* \* \*

This case involves a challenge to a DHS regulation that allows F-1 student visa holders to remain in the country after they graduate and to work in fields related to their area of study for up to 36 months. Improving and Expanding Training Opportunities for F-1 Nonimmigrant Students with STEM Degrees and Cap-Gap Relief for All Eligible F-1 Students, 81 Fed. Reg. 13,040, 13,087 (Mar. 11, 2016). Under the INA, the F-1 designation requires an alien to be a "bona fide student qualified to pursue a full course of study" who "seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study." Immigration and Nationality Act, Pub. L. No. 82-414, § 101(a)(15)(F), 66 Stat. 163, 168 (1952) (codified as amended at 8 U.S.C. § 1101(a)(15)(F)(i)).

2

Despite the requirements that an F-1 visa go to a person who is a "bona fide student" seeking "solely" to pursue a course of study in the United States, the majority concludes that DHS has general authority to extend an F-1 visa for any "reasonably related" purpose. *See Wash. All. of Tech. Workers v. DHS* ("*Washtech*"), 50 F.4th 164, 178 (D.C. Cir. 2022). On the majority's reading, the highly specific requirements of the F-1 provision define only requirements of entry, rather than ongoing conditions for an alien to remain in the United States. The majority explicitly recognizes that its reasoning and analysis applies to all nonimmigrant categories. *See id.* at 169, 189.

The panel opinion turns Congress's carefully calibrated scheme on its head. The INA enumerates 22 categories of "nonimmigrants" who may be eligible for visas to come to the country temporarily, with many categories further divided into specific subcategories. *See* 8 U.S.C. § 1101(a)(15)(A)–(V). The nonimmigrant categories are precisely delineated, reflecting Congress's judgments as to which aliens may be admitted into the country and for what reason. For instance, an E-3 visa is available to an alien seeking "to perform services in a specialty occupation in the United States" but only "if the alien is a national of the Commonwealth of Australia." *Id.* § 1101(a)(15)(E)(iii). An H-2A visa is available to an alien seeking to perform "agricultural labor," but only such labor as explicitly "defined in section 3121(g) of title 26," "as defined in section 203(f) of title 29," or "the pressing of apples for cider on a farm." *Id.* § 1101(a)(15)(H)(ii)(a).

These provisions exemplify Congress's detailed attention to the very specific conditions that attach to each nonimmigrant visa. Nonetheless, the panel concludes such statutory requirements apply only at the moment of entry. DHS therefore may "regulate how long and under what conditions

3

nonimmigrants may stay in the country." *Washtech*, 50 F.4th at 170. Although Congress has set out the conditions for *entry*, the panel draws the surprising conclusion that DHS may prescribe different criteria for *staying* in the United States.

Under the majority's approach, DHS is left with wide discretion to determine which aliens may remain in the country even after the grounds for their visa have lapsed. The only constraint identified by the panel is that an extended stay must be "reasonably related" to the particular visa category. *See id.* at 178–79. This capacious standard could distort other nonimmigrant categories, allowing, for instance, an agricultural worker admitted under an H-2A visa to remain in the country even if he abandons his agricultural work and opts instead to pursue a degree in agricultural sciences. Glossing over Congress's delineation of dozens of discrete categories, the majority's interpretation effectively erases the INA's very specific requirements the moment an alien enters the United States.[1]

The panel's holding that DHS has general discretion to permit lengthy work stays for nonimmigrants is similarly difficult to square with the detailed statutory requirements for work visas. Congress has enumerated specific pathways for aliens to work. Some, such as the H-1B visa for skilled workers and the H-2B visa for nonagricultural workers, are subject to annual numerical limits. *See* 8 U.S.C. § 1184(g)(1). Allowing

---

[1] The fact that DHS has long granted some extensions of the F-1 visa does not change the question of whether the agency has authority to do so. Agencies may exercise only the authority granted by Congress and such authority cannot be conferred by silence. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress.").

4

F-1 students to work does an end run around these numerical limits for skilled workers because they are often interchangeable. *See Washtech*, 50 F.4th at 203 (Henderson, J., concurring in part and dissenting in part) (observing that F-1 visa holders working after completion of their studies have "surpassed the H-1B visa program as the greatest source of highly skilled guest workers").

The INA's provisions for work visas reflect political judgments balancing the competing interests of employers and American workers. Such detailed legislation is incompatible with assuming a broad delegation to DHS to confer additional work visas through regulation. As the Supreme Court recently emphasized, "extraordinary grants of regulatory authority" require not "a merely plausible textual basis for the agency action" but "clear congressional authorization." *West Virginia v. EPA*, 142 S. Ct. 2587, 2609 (2022) (cleaned up). Here, as Judge Henderson explained, there is not even a plausible textual basis for DHS to allow student visa holders to remain in the country and work long after their student status has lapsed. *See Washtech*, 50 F.4th at 198–204 (Henderson, J., concurring in part and dissenting in part).

The majority's argument to the contrary rests on a fundamental misreading of the statute. The central claim for DHS's broad authority is that the INA contemplates a two-step process: nonimmigrant categories specify "entry conditions," while the "post-arrival" requirements are "spelled out pursuant to section 1184(a)(1)." *Id.* at 169–70 (majority opinion). Section 1184(a)(1), however, is not about post-arrival requirements. Rather, it provides that "[t]he *admission* to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe." 8 U.S.C. § 1184(a)(1) (emphasis added). DHS's regulatory authority to set time and conditions

5

applies only to "admission." If there were any doubt about the plain meaning of the term, "admission" is explicitly defined as "the lawful *entry* of the alien into the United States." 8 U.S.C. § 1101(a)(13)(A) (emphasis added).

It is therefore quite clear that section 1184(a)(1) allows DHS to prescribe regulations that govern aliens' entry into the country, but does not provide independent authority for expanding "post-arrival" stays and work authorization. If the nonimmigrant categories define only the terms of "entry," as the majority holds, then DHS's regulatory authority over "admission" is similarly limited to the terms of entry.

The interpretation most consistent with the text and structure of the INA is that the criteria that apply at admission continue to govern a nonimmigrant's stay in the country after entry. DHS has authority to fill in the details of these statutory requirements by promulgating regulations under section 1184(a)(1). For instance, DHS has permitted F-1 students a short period of time to remain in the country after they graduate, because students are not expected to depart the moment their studies end. *See* 8 C.F.R. § 214.2(f)(5)(iv). Providing such details is reasonably within the authority to set the time and conditions of admission.

Section 1184(a)(1), however, does not provide authority for DHS to allow F-1 visa holders to stay and work in the United States for years after they are no longer students. Such valuable benefits are entirely distinct from the time and conditions of admission. This plain meaning is consistent with binding circuit precedent, in which we have held the F-1 visa provision imposes ongoing conditions. *See Anwo v. INS*, 607 F.2d 435, 437 (D.C. Cir. 1979) (per curiam) (holding that if an F-1 student visa holder "did intend to make the United States his permanent home and domicile, then he violated the

6

conditions of his student visa and was not here 'lawfully'"). The panel majority, however, fails even to cite this binding circuit precedent.[2]

In light of the clear statutory directives, it is unsurprising that no court of appeals has adopted the approach taken by the panel majority. In fact, the Supreme Court and other circuits have consistently held nonimmigrant visa holders must satisfy the statutory criteria both at entry and during their presence in the United States. *See, e.g.*, *Elkins v. Moreno*, 435 U.S. 647, 666–67 (1978) ("Of course, should a G-4 alien terminate his employment with an international treaty organization, both he and his family would lose their G-4 status."); *Khano v. INS*, 999 F.2d 1203, 1207 & n.2 (7th Cir. 1993) (stating the immigration authorities may deport "those nonimmigrants who fail to maintain the conditions attached to their nonimmigrant status while in the United States"); *Graham v. INS*, 998 F.2d 194, 196 (3d Cir. 1993) (holding that if an alien on a temporary worker visa planned "to make the United States his domicile, then he violated the conditions of his visa and his intent was not lawful"); *Castillo-Felix v. INS*, 601 F.2d 459, 464 (9th Cir. 1979) (holding that aliens who "are here for a temporary purpose" yet intend to remain in the country "violate the terms of their admission and are no longer here lawfully").

---

[2] The majority primarily relies on a nearly fifty-year old Third Circuit decision. *See Rogers v. Larson*, 563 F.2d 617 (3d Cir. 1977). But that opinion merely stated a particular nonimmigrant visa provision was "silent as to any controls to which … aliens will be subject after they arrive in this country." *Id.* at 622–23. The opinion nowhere stated the nonimmigrant requirements apply only at entry, and the Third Circuit has subsequently interpreted a nonimmigrant visa provision as imposing ongoing conditions during an alien's presence in the United States. *Graham v. INS*, 998 F.2d 194, 196 (3d Cir. 1993).

7

Inconsistent with the text and the structure of the INA, the panel's decision has also created a lopsided circuit split.

\* \* \*

The program at issue here may be longstanding; it may even be good policy for retaining high-skilled graduates who will further innovation and economic development. But irrespective of the benefits of DHS's regulations, neither the agency nor this court is authorized to rewrite the immigration laws established by Congress. The panel decision is inconsistent with the detailed nonimmigrant visa program, which precisely specifies who may enter and for what purposes. And the panel's reasoning applies not just to F-1 visa holders, but extends DHS's authority to confer valuable benefits to all nonimmigrant visa holders. Because the legal questions are weighty and have important consequences for the enforcement of immigration law, I would grant rehearing en banc.